IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ANGELA THOMAS, | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) |
| EQUIFAX INFORMATION | ) |
|   SERVICES, LLC., | )    **JURY TRIAL DEMANDED** |
| | ) |
|       **Defendants.** | ) |

## COMPLAINT

NOW COMES the Plaintiff, ANGELA THOMAS, by and through her attorneys, SMITHMARCO, P.C., and for her complaint against EQUIFAX INFORMATION SERVICES, LLC., Plaintiff states as follows:

### I.    PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages for violations of the Fair Credit Reporting Act (hereinafter "FCRA"), 15 U.S.C. §1681, et. seq.

### II.    JURISDICTION & VENUE

2. Jurisdiction arises under the Fair Credit Reporting Act 15 U.S.C. §1681, et. seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### III.    PARTIES

4. ANGELA THOMAS, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Omaha, County of Douglas, State of Nebraska.

1

5. At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

6. EQUIFAX INFORMATION SERVICES, LLC., (hereinafter, "Defendant"), is a business entity that regularly conducts business in the State of Nebraska. Defendant is registered as a limited liability company in the state of Georgia.

7. At all relevant times Defendant was a "person" as that term is defined by 15 U.S.C. §1681a(b).

8. At all relevant times Defendant was a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

### IV.  ALLEGATIONS

9. At all relevant times, credit reports as alleged in this pleading are "consumer reports" as that term is defined by 15 U.S.C. §1681a(d).

10. On or about January 4, 2013, Plaintiff requested a copy of her credit report from the three (3) major reporting bureaus through www.creditreport.com.

11. Pursuant to Plaintiff's request, Trans Union and Experian provided Plaintiff with a copy of her credit report.

12. Defendant, however, declined Plaintiff's online request for a copy of her credit report and referred Plaintiff to its customer care department.

13. On or about January 5, 2013, Plaintiff initiated a telephone call to Defendant's customer care department.

14. During the aforementioned telephone call between Plaintiff and Defendant, Plaintiff requested a copy of her credit report.

15. Before engaging in a further communication with Plaintiff, Defendant insisted on obtaining information from Plaintiff in order to verify her identity.

16. Defendant then asked Plaintiff for the last four (4) digits of her social security number and for her father's middle name.

17. Plaintiff provided Defendant with the last four (4) digits of her social security number and her father's middle name.

18. Subsequent to Defendant's verification of Plaintiff's personal information, Defendant informed Plaintiff that it would send Plaintiff a copy of her credit report within seven (7) days and instructed her to call back if she did not receive her credit report within that time period.

19. On or about January 12, 2013, Plaintiff initiated another telephone call to Defendant.

20. During the aforementioned telephone call between Plaintiff and Defendant, Plaintiff apprised Defendant of the fact that she had contacted Defendant on or about January 5, 2013, in order to obtain a copy of her credit report.

21. Plaintiff informed Defendant that she had not yet received her credit report from Defendant.

22. Defendant told Plaintiff that in order to provide her with her credit report, Defendant required certain documentation from Plaintiff in order to properly identify her.

23. Defendant instructed Plaintiff to send to Defendant a copy of her driver's license, a copy of her social security card, and documentation that listed Plaintiff's current name and maiden name, her current and previous address, her telephone number, and her e-mail address.

24. The aforementioned request by Defendant was the first time Defendant had requested any type of documentation from Plaintiff, despite its previous telephone conversation with Plaintiff on or about January 5, 2013.

25. During the aforementioned telephone call between Plaintiff and Defendant, Plaintiff informed Defendant that she did not have access to a fax machine and asked whether she could e-mail the aforementioned documents to Defendant.

26. Defendant told Plaintiff that e-mail correspondence was an acceptable form of communication.

27. Defendant provided Plaintiff with an e-mail address to which Plaintiff could send the requested documents.

28. On or about January 15, 2013, Plaintiff sent Defendant an e-mail correspondence, which contained as attachments all of the documents Defendant requested from Plaintiff.

29. On or about January 18, 2013, Plaintiff initiated another telephone call to Defendant to ascertain the progress of her credit report request.

30. During the aforementioned telephone call between Plaintiff and Defendant, Defendant informed Plaintiff that her request was still pending and that she would be contacted by Defendant once her request was completed.

31. On or about January 22, 2013, Plaintiff sent another e-mail correspondence to Defendant inquiring whether Defendant had received the documents Plaintiff sent it in her e-mail correspondence on January 15, 2013.

32. On or about January 22, 2013, Defendant replied to Plaintiff's e-mail correspondence.

33. In its reply, Defendant stated "Upon further review, we show that your file is owned by CSC credit services. We are not able to help address this concern for you via e-mail. You may send in some documentation to have your personal information updated on your Equifax Credit File."

34. Contrary to the information Defendant had previously provided to Plaintiff, the aforementioned e-mail correspondence further instructed Plaintiff to mail a copy of her driver's license or state ID, a copy of a utility bill, statement, rental or rental/mortgage agreement in her name, and a copy of her social security card or a W2 form. The documents were to be mailed to CSC Credit Services, PO Box 619054.

35. Upon information and belief, Defendant has access to CSC Credit Services' information database.

36. On or about January 22, 2013, Plaintiff sent Defendant an e-mail correspondence that informed Defendant that Plaintiff had already sent all of the requested identification documents to Defendant in an e-mail correspondence, dated January 15, 2013.

37. On or about January 23, 2013, Defendant replied to Plaintiff through e-mail correspondence.

38. In the correspondence Defendant sent to Plaintiff, on or about January 23, 2013, Defendant stated "We understand your concerns, but due to security restrictions we are not able to update your name on your credit file via e-mail."

39. The aforementioned correspondence further stated "Upon further review, we can confirm that we have received your scan documents on January 15, 2013. However, in order to dispute, the documents should be faxed to the Equifax Consumer Division. This is a division of Equifax that has full access and will be able to perform the appropriate changes to your credit

file. Please send a cover sheet with your name, SSN, e-mail address and contact telephone number, along with the copy of your Social Security Card to the fax #888-826-0549."

40. Contrary to Defendant's statement in its e-mail correspondence sent on January 23, 2013, Plaintiff has never disputed any information on her credit report with Defendant.

41. At all relevant times, Plaintiff has requested a copy of her credit report from Defendant in order to ascertain whether there was any information on her credit report that Plaintiff should dispute.

42. Subsequent to Plaintiff's receipt of Defendant's e-mail correspondence, sent on or about January 23, 2013, Plaintiff faxed all of the requested, identification documents to the number Defendant listed in its e-mail correspondence.

43. In or around February 11, 2013, Plaintiff sent another e-mail correspondence to Defendant.

44. In the e-mail correspondence Plaintiff sent to Defendant, dated February 11, 2013, Plaintiff informed Defendant that forty-five (45) days had passed since her initial request to Defendant for a copy of her credit report, and that she had still not received the credit report from Defendant.

45. On or about February 12, 2013, Defendant replied to Plaintiff's e-mail correspondence.

46. In its reply, dated February 12, 2013, Defendant stated "Upon further review, we have confirmed that our Email Customer Care Department processed your request on 01/24/2013. We understand you concerns, but due to security restrictions we are not able to update your name on your credit via email. In order to update, the documents should be faxed to the Equifax Consumer Division. This is a division of Equifax that has full access and will be able

6

to perform the appropriate changes to your credit file. Please send a cover sheet with your name, SSN, e-mail address and contact telephone number, along with the copy of your Social Security Card to the fax #888-826-0549."

47.     On or about February 14, 2013, Plaintiff replied to Defendant's e-mail, dated February 12, 2013.

48.     In her e-mail, dated February 14, 2013, Plaintiff stated "On January 23, 2013, I sent Equifax Customer Care 17 page fax, with all of my personal documentation in several PDF Files, and e-mails of each incident report and a cover Letter. I have repeatedly sent you My Drivers License, Social Security Card, address, date of birth, addresses, phone number and e-mail address. It was directly sent to Equifax Customer Care Division at the fax number your just repeated. I have for Over a month now have contacted you by phone multiple times, e-mail multiple times and by fac (sic)… I have a right to both my personal Credit Report and my credit score."

49.     On or about February 18, 2013, Defendant sent Plaintiff another e-mail correspondence.

50.     In the e-mail correspondence Defendant sent to Plaintiff, dated February 18, 2013, Defendant stated "Unfortunately, we are not able to update your account information via e-mail, since your credit files are owned by CSC Credit Services. CSC Credit Services owned credit files are included in the Equifax database. In instances where CSC Credit Services maintains ownership of your credit file, you should initiate any request to dispute information directly with the affiliate by contacting them as follows: For a dispute write to: CSC Credit Services Consumer Processing, PO Box 740040, Atlanta, GA 30374, CSC Consumer Call Center: 800-555-4544."

51. On or about March 12, 2013, Plaintiff again resubmitted all of the aforementioned, identification documents to Defendant via e-mail correspondence.

52. In the e-mail correspondence Plaintiff sent to Defendant, dated March 12, 2013, Plaintiff reiterated the fact that she wanted a copy of her credit report and credit score.

53. On or about March 13, 2013, Defendant replied to Plaintiff's e-mail correspondence.

54. In its e-mail correspondence, dated March 13, 2013, Defendant provided Plaintiff with instructions on how to obtain a copy of her credit report by utilizing Defendant's website.

55. Subsequent to Plaintiff's receipt of Defendant's correspondence, sent on March 13, 2013, Plaintiff visited Defendant's website and requested a copy of her credit report as instructed by Defendant.

56. However, Defendant's website rejected Plaintiff' request and directed Plaintiff to call its customer service department.

57. On or about March 29, 2013, Plaintiff initiated a telephone call to Defendant.

58. During the aforementioned telephone call between Plaintiff and Defendant, Plaintiff provided Defendant with a history of her communications with Defendant.

59. Plaintiff then inquired whether Defendant had received the fax she had sent Defendant on or about January 23, 2012.

60. Defendant asked Plaintiff to what fax number Plaintiff sent the information.

61. Plaintiff provided Defendant with the fax number Defendant had previously instructed Plaintiff to use in its January 23, 2013, e-mail correspondence.

62. Defendant informed Plaintiff that the fax number Plaintiff had previously used to send her identification documents was wrong, and provided Plaintiff with a new fax number.

63. Plaintiff further inquired whether Defendant had received her e-mail correspondence, sent to Defendant on or about January 15, 2013, that contained all of Plaintiff's identification documents.

64. Defendant informed Plaintiff that it had not received the aforementioned e-mail correspondence.

65. Defendant instructed Plaintiff that if she wanted a copy of her credit report, she needed to send her identification documents to the newly provided fax number.

66. To date, despite Plaintiff's numerous requests and strict compliance with each of Defendant's myriad of requests, Defendant has failed to provide Plaintiff with a copy of her credit report.

67. Despite Plaintiff's efforts to date, Defendant has nonetheless deliberately, willfully, intentionally, recklessly and negligently repeatedly failed to provide Plaintiff with a copy of her credit report as required by the FCRA.

68. Plaintiff has been damaged, and continues to be damaged, in the following ways:

   a. Out of pocket expenses associated with attempts to obtain her credit report only to find the Defendant requesting the same or additional documents from her; and,

   b. Emotional distress and mental anguish associated with her unsuccessful attempts to obtain her credit report despite her strict compliance with Defendant's requests.

69. At all times pertinent hereto, Defendant was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Defendant.

70. At all times pertinent hereto, the conduct of Defendant, as well as that of its agents, servants and/or employees, was malicious, intentional, willful, reckless, and in gross disregard for the rights of Plaintiff.

71. Pursuant to 15 U.S.C. §1681g and 15 U.S.C. §1681h, Defendant is liable to Plaintiff for engaging in the following conduct:

    a. Failing to disclose, upon the consumer's request, all of the information in the consumer's file at the time of the request, in violation of 15 U.S.C. §1681g(a).

72. The conduct of Defendant was a direct and proximate cause, as well as a substantial factor, in bringing about the injuries, damages and harm to Plaintiff that are outlined more fully above and, as a result, Defendant is liable to Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

### V. JURY DEMAND

73. Plaintiff hereby demands a trial by jury on all issues so triable.

74. The Plaintiff, ANGELA THOMAS, by and through her attorneys, SMITHMARCO, P.C. and pursuant to Nebraska Civil Rule 40.1(b), hereby respectfully requests that the trial of this matter proceed in either Omaha or Lincoln.

### VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, ANGELA THOMAS, by and through her attorneys, respectfully prays for Judgment to be entered in favor of Plaintiff and against Defendant as follows:

    a. All actual compensatory damages suffered;

    b. Statutory damages of $1,000.00;

    c. Punitive damages;

    d.    Plaintiff's attorneys' fees and costs; and,

    e.    Any other relief deemed appropriate by this Honorable Court.

        Respectfully submitted,
        **ANGELA THOMAS**

By:    s/ David M. Marco
      Attorney for Plaintiff

Dated: May 14, 2013

David M. Marco (Atty. No.: 6273315)
SMITHMARCO, P.C.
205 North Michigan Avenue, Suite 2940
Chicago, IL 60601
Telephone:   (312) 546-6539
Facsimile:   (888) 418-1277
E-Mail:   dmarco@smithmarco.com

11